# REPORTS OF CASES

DETERMINED IN THE

# SUPREME COURT,

## OCTOBER TERM, 1871.

---

[No. 2,788.]

## ANDREW GOODYEAR *v.* JOHN E. WILLISTON AND ISAAC HOBBS.

SEIZURE BY SHERIFF, AT DIRECTION OF JUDGMENT CREDITOR, WHEN JOINT TRESPASS.—Where a Sheriff, under an execution against McGrane, and at the direction of the judgment creditor Williston, seized upon certain property, including wheat and barley, in possession of Goodyear, who had purchased in good faith and for value of McGrane after the crop was cut and stacked; and, at the same time, the Sheriff, having in his hands a mortgage given by McGrane to Williston upon the crop while growing, took possession of the wheat and barley also under such mortgage, and placed all the property seized in possession of Casey, as his keeper, as agent of Williston: *held,* that these facts established a joint taking by the Sheriff and judgment creditor, which, if wrongful, would sustain an action against them jointly as trespassers.

MORTGAGE ON GROWING CROP.—The intent of the provision relating to mortgages of growing crops, in section seventeen of the Statute of Frauds (Stats. 1856, p. 87), was to protect the lien of such a mortgage, without any delivery of possession, until the crop was so far harvested as to be capable

of manual delivery and transportation; but the continuance of such lien afterwards, as against a subsequent purchaser in good faith, depends upon actual delivery of the crop to the mortgagee, and his retention of the possession thereof.

PURCHASE IN STACKS OF GRAIN MORTGAGED WHILE GROWING.—Where a mortgage was given upon growing crops of wheat and barley, as provided in section seventeen of the Statute of Frauds (Stats. 1856, p. 87), and after they were cut and put into stacks and shocks the mortgagor sold and delivered them to a purchaser in good faith, and for value: *held*, that the lien of the mortgage, without possession in the mortgagee, extended only to a severance of the crops from the land, and that the purchaser took them relieved of the mortgage lien.

APPEAL from the District Court of the Seventh Judicial District, County of Solano.

This was an action to recover possession of eighty tons of hay, sixty tons of wheat, some in stacks and shocks, and the balance thrashed and sacked; seventy-five tons of barley, in stacks and shocks; and certain plows, farming tools, and hogs—in all claimed to be worth two thousand dollars; or their value, in case a delivery could not be had; also, damages in the sum of five hundred dollars, for alleged unlawful seizure and detention thereof.

It appears from the findings of the Court below, that in November, 1869, the plaintiff, Goodyear, being the owner of a tract of land in Solano County, made a contract with Thomas McGrane, wherein the latter agreed to enter upon said tract, cultivate as much of it as he could, and cut hay on the balance, Goodyear furnishing the necessary money and advances; that by the terms of said contract, upon the completion of the harvesting of the crops, one fourth was to be reserved and given to Goodyear as the value of the land for the season; and the balance was to be taken and disposed of by Goodyear, who, after deducting from the proceeds the amount of the advances made, and indebtedness due him, was to pay the remainder over to McGrane; that, pursuant to the contract, McGrane entered upon the

tract, and planted wheat and barley, which he cut in July, 1870; and, prior to August tenth, he had it all in stacks and shocks, and was engaged in baling hay; that on said day, by a bill of sale, he sold all said wheat, barley, and hay, and all the other personal property, to Goodyear, who took possession of the same, and was in possession at the time the defendants seized it.

In April, 1870, McGrane made a promissory note to the defendant Williston for one thousand five hundred dollars and upwards, and, to secure the same, executed to him a mortgage upon his growing crops of wheat and barley, which was recorded; that on August fifteenth McGrane confessed a judgment in a Justice's Court in favor of Williston and one Brownlee; and the defendant Hobbs, as Sheriff of Solano County, about three weeks after the wheat and barley were cut and stacked, seized all the property mentioned, under an execution upon such judgment, and under said mortgage, and placed the same in possession of one Casey, as his keeper, and also as agent of Williston.

The judgment for plaintiff was against both defendants, for a return of the property or its value, assessed at two thousand dollars.   Both defendants appealed.

*Goodwin & Gregory* and *J. McKenna,* for Appellants.

To maintain a joint action against two parties, for the recovery of personal property, they must have joint possession of such property, and the whole thereof, at the commencement of the suit.   But Casey was only Williston's agent to receive possession of the wheat and barley.   Williston did not take or receive possession of the hay, farming implements, and other property, either himself or by an agent.   Therefore the Court erred in rendering judgment against Williston for all the property.   There was a misjoinder of the parties defendant.

The contract between McGrane and Goodyear was a lease.

McGrane was the owner of the produce, and could dispose of it by sale, mortgage, or it was attachable by his creditors. (*Butterfield* v. *Baker*, 5 Pick. 522; *Munsil* v. *Carew*, 2 Cush. 50; *Symonds* v. *Hall*, 37 Me. 356; *Turner* v. *Bacheder*, 17 Me. 257; *Walls* v. *Preston*, 25 Cal. 63.)

Williston was not required to take possession of the wheat and barley under his mortgage until they were harvested. (Statute of Frauds, Sec. 17; *Quiriaque* v. *Dennis*, 24 Cal. 154.) Mere severance from the leasehold is but one step in the harvest. "Harvested" is a comprehensive word, and expresses all the acts necessary to the acquisition and use of the matured grain, by the sower thereof, until the end and completion. It expresses the state in which the crop is put in the market—in which it can be handled, delivered, transported—and the mortgagee is not required to take possession of a crop until it is reduced to this state. (*Bours* v. *Webster*, 6 Cal. 660; *Davis* v. *McFarlane*, 37 Cal. 634; *Whipple* v. *Foot*, 2 Johns. 418; *Robbins* v. *Oldham*, 1 Duval, 28.)

*Wm. S. Wells* and *L. B. Mizner*, for Respondent.

There was an entry by the Sheriff in a double capacity—official, under the execution, and as an agent, representing Williston as holder of the mortgage; both defendants are joint trespassers, and there was no misjoinder. (*Lewis* v. *Johns*, 34 Cal. 629; *Nichols* v. *Michall*, 23 N. Y. 264; *Symonds* v. *Hall*, 32 Me. 354.)

Under the contract the entire property was in Goodyear, independent of the sale. (*Bernal* v. *Hovious*, 17 Cal. 546.) The defendant Williston failed to take possession of the property at the time required by law, and thereby lost the benefit of his mortgage. The case is not to be determined by defining the word "harvest;" for the statute plainly enacts that the mortgage lien shall cease as against subsequent purchasers unless possession of such crops, when harvested, be delivered to the mortgagee, as in other cases of mortgage

of personal property. The meaning of the statute is that such crops shall be delivered to the mortgagee upon severance from the freehold; for they then become personal property. (*Chaffin* v. *Doub*, 14 Cal. 384; Brown on Frauds, Sec. 254; *Whitmarsh* v. *Walker*, 1 Metcalf, 313; 3 Parsons on Contracts, 31.)

By the Court, SPRAGUE, J.:

This is an appeal from the judgment, upon the judgment roll alone, by the defendants, who contend that the findings do not sustain the judgment. It is claimed that the findings show that the defendants were not jointly interested in the personal property sought to be recovered by plaintiff, and that they did not take joint possession of such property, or any portion thereof; hence no joint judgment could be properly entered against them. The findings show that defendant Hobbs, as Sheriff of Solano County, by virtue of an execution in his hands in favor of Williston and Brownlee, and against McGrane, on or about the 15th day of August, 1870, "under the direction of said Williston, entered upon and attached the property described in the complaint; * * * that at the time of the entry of the Sheriff on said tract he had the mortgage in his possession, and with said attachment [execution], and under said mortgage, he attempted to and did take possession of all said wheat and barley, and the other property described in the complaint, and left the same in the possession of one Casey, as his keeper and also as agent of said defendant Williston, and then took the property in the complaint described, and detained and still detains the same from the plaintiff." These facts establish a joint taking and detention by the defendants, which, if wrongful, clearly sustain a judgment against them jointly, as trespassers, whether Williston assumed to act as mortgagee of a portion of the property, or as joint judg-

ment creditor with Brownlee. The defendant Hobbs was clearly a trespasser, upon the facts as found; as no portion of the property was at the time subject to execution as the property of McGrane; and Williston, in directing the levy, was a joint trespasser with him as to all the property except the wheat and barley. As to the wheat and barley, it is claimed that Williston was justified in taking possession thereof, under his mortgage of the growing crop, of April 29th, 1870. The validity of this claim involves the construction of the seventeenth section of the Act of May 19th, 1850, "concerning fraudulent conveyances and contracts," as amended April 9th, 1856, which section, as amended, reads as follows:

"Sec. 17. No mortgage of personal property hereafter made shall be valid against any other person than the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee; *provided*, that a mortgage upon growing crops, executed, acknowledged, and recorded like mortgages upon real estate, shall be valid as against third parties without such delivery of possession; but the lien of such mortgage shall cease as against subsequent purchasers unless possession of such crops, when harvested, be delivered to the mortgagee, as required in other cases of mortgage of personal property." (Stats. 1856, p. 87.)

It appears from the findings that McGrane, the mortgagor, who had sown and cultivated the grain, on or about the 20th day of July, 1870, cut the same, and afterwards, and prior to the tenth day of August thereafter, had it in stacks and shocks; that afterwards, on said 10th day of August, 1870, said McGrane, by bill of sale, duly executed, bargained and sold to plaintiff all said wheat and barley, and delivered the possession thereof to him, who thereupon took and retained possession of the same, and was in possession thereof at the time the defendants entered and took possession, and

that such sale to plaintiff was made in good faith and for a valuable consideration.

The question here presented is whether, under this statute, the lien of the mortgagee, Williston, as against the purchaser, Goodyear, had ceased to exist on or prior to the fifteenth day of August, when he claims to have taken possession of the wheat and barley by virtue of his mortgage. From a careful reading of the seventeenth section it seems obvious that the intent of the Legislature was to protect the lien of a mortgagee of growing crops by a recordation of his mortgage, without an actual and continued change of possession from the mortgagor to the mortgagee of the lands upon which the crop is growing, until such crop is matured and so far harvested as to be severed from the land and placed in a condition capable of manual delivery and transportation; and when this condition of the crop is attained, to make a continuance of the mortgage lien as against subsequent purchasers in good faith, dependent upon the then actual delivery of the crop to the mortgagee, and his retention of the possession thereof. This condition of the crop was attained prior to the 10th day of August, 1870, on which day the plaintiff purchased and took the actual possession of it from the mortgagor. The mortgagee does not claim to have taken, or attempted to take, possession, until the plaintiff had been in the actual possession for five days; and I am satisfied the learned Judge of the Court below was correct in his view that the plaintiff, as purchaser of the grain in the stack and shock, took the same relieved of the defendant Williston's mortgage lien.

With these views it becomes unnecessary to notice the questions discussed by counsel arising upon the original lease or cropping contract between plaintiff and McGrane.

Judgment affirmed.

By CROCKETT, J., concurring specially, RHODES, C. J., concurring:

I concur in the judgment, on the ground that under the contract of November, 1869, between Goodyear and McGrane, the title of the growing crop, as it was grown, vested in Goodyear, who was entitled to retain one fourth to his own use, with an absolute power of sale and disposition as to the remainder, retaining out of the proceeds his advances and all indebtedness due to him from McGrane, and accounting to the latter for the remainder of the proceeds. Under this contract McGrane never had any *title* to the growing crop, but only an interest in the proceeds.

I concur with Mr. Justice SPRAGUE as to the joint liability of the defendants, but express no opinion on the other point discussed in his opinion.